# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| | : | |
| COMPUTER PERSONALITIES SYSTEMS, INC., | : | Bankruptcy No. 01-14231DWS |
| | : | |
| Debtor. | : | |
| | : | |
| LAWRENCE LICHTENSTEIN, Trustee for the Estate of Computer Personalities Systems, Inc., | : | Adversary No. 05-0006 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ASPECT COMPUTER CORPORATION [dsm'd 7/29/05], CHU-WEN TSENG, CHIEN-HO CHU aka Jonathan Chu [dsm'd 7/29/05], FREMONT BONAVENTURE, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

**BY: DIANE WEISS SIGMUND, Chief Bankruptcy Judge**

Before the Court is the Motion of Lawrence Lichtenstein ("Plaintiff" or "Trustee"), plaintiff in the above-captioned adversary proceeding and the Chapter 7 trustee of the bankruptcy estate of Computer Personalities Systems, Inc. ("CPSI")[1] for Summary Judgment

---

[1] CPSI filed a voluntary petition on March 23, 2001 under Chapter 11 of the United States Bankruptcy Code (the "Code") which was converted to a Chapter 7 case on May 1, 2001. On that same date, in accordance with Section 701 of the Code, the United States Trustee issued a notice appointing Lawrence Lichtenstein as Trustee for the Debtor's bankruptcy estate. Since his

(the "SJ Motion") against the two remaining defendants Chu-Wen Tseng ("Tseng") and Fremont Bonaventure ("Fremont") (together, the "Defendants") seeking the entry of judgment pursuant to Federal Rule of Civil Procedure 56 (as incorporated herein by Federal Rule of Bankruptcy Procedure 7056).[2] Plaintiff supports his SJ Motion with the Affidavit of Alexander Barnes, Esquire ("Barnes Aff.") and Exhibits A through K. Neither of the Defendants have filed an answer to the Motion nor appeared at the hearing held on October 23, 2006.

**BACKGROUND**

In May 2002 the Trustee filed a Complaint (Adv. No. 02-0684) against Aspect for the avoidance and recovery of transfers totaling $1,036,912.00 (the "Transfers") made by Debtor to Aspect during the ninety-day period preceding the Petition Date ("Aspect Adversary"). On July 2, 2004, I entered a Memorandum Opinion and Order granting the Trustee's Motion for Summary Judgment filed on January 30, 2004 in the Aspect Adversary, finding that the Transfers were avoidable and recoverable by the Trustee pursuant to 11 U.S.C. §§ 547 and 550 (the "Judgment"). Lichtenstein v. Aspect Computer (In re Computer Personalities Systems, Inc.), 2004 WL 1607005 (Bankr. E.D. Pa. July 2, 2004). The Judgment was appealed to the District Court for the Eastern District of Pennsylvania which, on February 22, 2005, affirmed my decision. Lichtenstein v. Aspect Computer, 320 B.R. 812

---

appointment, the Trustee has been performing the duties and responsibilities of a Trustee for the estate of CPSI as required by Code § 704.

[2] Aspect Computer Company ("Aspect") and Chien-Ho Chu ("Chu") were dismissed as defendants on July 29, 2005.

(E.D. Pa. 2005). Aspect then filed an appeal of the District Court decision to the Third Circuit Court of Appeals which is currently pending. Aspect has neither filed a bond nor sought a stay of the enforcement of the Judgment.[3] However, as a result of the transactions described herein, the Trustee has been foreclosed from collecting the Judgment.

Just days after entry of the Judgment, Joe Fong Hou ("Hou"), a private lawyer who has regularly represented Aspect,[4] Exhibit "F", Tseng Answer to Interrogatory number 6, filed UCC-1 Financing Statements covering Aspect's assets (the "Collateral") for the benefit of Tseng.[5] On or about July 13, 2004, he filed these forms with the Clerk of Somerset County, New Jersey, and on July 27, 2004 he did the same with the State of New Jersey, Department of Treasury (the "Tseng UCC's"). Exhibit "B". See also Exhibit "C", Complaint, ¶ 23; and Exhibit "D" Answer, ¶ 23. Tseng is an insider of Aspect in that she is the spouse of Jonathan Chu, Aspect's president and alleged sole shareholder. Exhibit "G", Tseng Answer to Interrogatory 6.

On July 13 and July 15, 2004 Hou filed identical UCC-1 Financing Statements on the Collateral with the Clerk of Somerset County, New Jersey and the State of New Jersey, Department of Treasury, respectively, in favor of Fremont ("Fremont UCC's") (together the

---

[3] I shall take judicial notice of the docket entries in this case. Fed.R.Evid. 201, incorporated in these proceedings by Fed.R.Bankr.P. 9017. See Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1200 n.3 (3d Cir. 1991); Levine v. Egidi, 1993 WL 69146, at *2 (N.D. Ill. 1993); In re Paolino, 1991 WL 284107, at *12 n. 19 (Bankr. E.D. Pa. 1991); see generally In re Indian Palms Associates, Ltd., 61 F.3d 197 (3d Cir. 1995).

[4] Indeed Hou prepared and filed the proof of claim of Aspect in the CPSI case. Exhibit "J" to Motion. He also appeared at the deposition of Chu taken on November 11, 2003. Barnes Affidavit ¶ 3 and 4.

[5] The Collateral consists of Aspect's inventory, accounts receivable, deposit proceeds from the sale of product, cash, and all insurance policies. Id.

Tseng and Fremont UCC's, the "UCC's"). Fremont is an entity located at 1598 Vinehill Circle, Fremont, California. Its close relationship to Aspect, while never acknowledged in the Answer to the Complaint or Discovery Responses, is suggested as its legal papers are identical to the filings made on behalf of Tseng and are authored by the same attorneys.

On or about January 4, 2005 the Trustee commenced the instant adversary proceeding against, inter alia, Tseng and Fremont seeking to set aside as fraudulent transfers the Tseng and Fremont UCC's. Tseng and Fremont filed a joint answer thereto, generally denying the averments of the Complaint. Exhibit "C" and "D" respectively.[6] Although the Defendants were resistant to Plaintiff's discovery,[7] Answers to Interrogatories ("Ans. Interrog."),

---

[6] The answer denies averments of the Complaint that one would expect the Defendants to have sufficient information to respond to. For example, they deny that Chu was the president and sole shareholder of Aspect when it is apparent from subsequent discovery that they at least knew he was the president. By way of further example, notwithstanding that Hou filed UCC's on Defendants behalf against Aspect at 21 Worlds Fair Drive, Somerset, New Jersey 08873, they deny knowledge that Aspect had offices at this address.

[7] Plaintiff served Interrogatories, Request for Production and Requests for Admission on Tseng and Fremont on September 21, 2005 and October 13, 2005, respectively. Exhibits "E" and "F" to Motion. In late 2005 and early 2006, it appeared that an agreement regarding the payment and satisfaction of the Judgment was imminent, which would have involved the global resolution of the instant adversary. Perhaps for that reason, responses to the discovery were not pressed. On or about June 5, 2006, I held a status conference and was advised by the Trustee's counsel that due to the intervening criminal indictment of Aspect's president Chu, a settlement regarding the satisfaction of the Judgment could not be reached. Being so advised, I directed counsel for the Defendants to provide discovery responses by June 26, 2006 as well as to make his clients available for depositions during the week of August 14, 2006. Additionally, I set a discovery deadline of August 21, 2006.

On June 27, 2006, the Discovery Responses were provided. Exhibits "G" and "H" and "I". The Discovery Responses were incomplete, evasive and provided many responses that stated that supplements would be made. Plaintiff filed a motion for the entry of an Order (i) compelling Defendants to answer and respond to Plaintiff's Interrogatories, Requests for Production, and Requests for Admission; (ii) precluding the Defendants from offering certain defenses; (iii) compelling Defendants to appear and submit to depositions; (iv) extending the discovery deadlines set forth in the Court's Second Amended Pretrial Order dated June 8, 2006; and (v) for

-4-

Answers to Requests for Admissions ("Adm.Ans.") and Responses to Requests for Production of Documents ("Doc. Ans.") for both Tseng and Fremont ("Discovery Responses") were ultimately supplied and form the basis of this Motion.

From the Discovery Responses, I find that Fremont made a series of loans to Aspect over time but that all of these loans have been repaid in full. Exhibit "H", Fremont's Ans. Interrog. 22. It is not clear when the loans were made or repaid, and Fremont has produced no Security Agreement in response to the request for same.[8] In answer to Interrogatory 22, Fremont stated that it " had made a series of loans to Aspect over time, all of which had been repaid in full. In light of Aspect's cash flow difficulties, taking a security interest in Aspect's assets was simply prudent." Nonetheless, and notwithstanding this litigation, it apparently has failed to file appropriate termination statements as the liens still are of record.

Tseng, on the other hand, contends that she made a loan to Aspect on or about January 12, 2004 in the principal amount of $800,000.00 and that this amount remains unpaid. Exhibit "G", Tseng's Ans. Interrog.7. As evidence of the obligation, Tseng produced two mortgage notes between Aspect (as borrower) and Tseng (as lender), both dated January 12, 2004 although Chu purportedly signed one on January 12, 2004

---

sanctions which is pending before this Court. Notwithstanding Plaintiff's view of the insufficiency of the Discovery Responses, Plaintiff asserts that there were sufficient disclosures made of a nature that warrants the relief sought in this Motion.

[8] An interrogatory requested all this detail to which Fremont responded "[s]ubject to supplementation," loans made are reflected in the records produced. However, no documents were produced on behalf of Fremont.

and the other on February 12, 2004 ("Mortgage Notes").  Exhibit "I", Tseng's Ans. Doc. (Bates nos. 76-77).  Using the same simple commercial note form, they appear to be two different attempts to memorialize the same transaction, only the latter dated note reflecting the amount of the loan and interest rate.  Both recite a five year repayment schedule of monthly payments of $15,840.96 beginning on February 12, 2004.  Id.  Notably Aspect has not made any payments of principal or interest to Tseng in connection with the aforementioned loan. Exhibit G, Tseng's Ans. Interrog.7.  Although nominally "Mortgage Notes," there is no mortgage referenced in either note.  While the note form provides that if the borrower is a corporation, its proper corporate officers must sign and its corporate seal must be affixed, there is no corporate seal.  Tseng also produced copies of two similar security agreements ("Security Agreements"), both dated June 30, 2004 between Aspect and Tseng.  These were also two attempts to create a security agreement utilizing the same form but varying in their respective references to the date of the underlying debt instrument.  While one identifies the January 12, 2004 Mortgage Note, the other references an instrument dated June 30, 2004.[9]  See Exhibit "I", Tseng's Ans. Doc. (Bates nos. 72-75 and 78-81).  Most significantly, both Security Agreements have failed to identify any collateral securing the Mortgage Note,[10] and Tseng confirms that she has produced all the notes and security

---

[9] The January 12 security agreement is signed and witnessed similar to the January 12 note whereas the June 30 security agreement is signed and witnessed similar to the February 12 note. It also appears that the month has been altered on that June security agreement.

[10] The form provides in paragraph 2 that "[a]s security for the debt and my other obligations to You under this Agreement, I give You a security interest in the property (referred to as the "Collateral") described on page four of this Agreement."  Page four of both Security Agreements (Description of Collateral) are blank and make no reference to any property of Aspect that would be the subject of the security agreement.

-6-

agreements for any claimed loans to Aspect between January 1, 2000 and the present. Exhibit "G" Tseng's Ans. Inter. 7.

Finally in support of a settlement offer from Aspect, its counsel attached a financial statement for the year end December 31, 2003 which shows that Aspect's then current assets are $5.7M against liabilities of $8.16M. Exhibit "K". This evidence and the fact that a $1 million Judgment was entered against it in July 2004, establish Aspect's precarious financial condition on the date the challenged liens were recorded.

The Plaintiff avers that there are no genuine issues of material fact with respect to the elements for avoidance of the UCC's under the applicable state Uniform Fraudulent Transfer Act,[11] thus making the case ripe for summary judgment in favor of the Plaintiff. For the reasons set forth below, I concur.

**DISCUSSION**

<u>A.</u>

A motion for summary judgment is governed by Federal Rules of Civil Procedure ("Fed.R.Civ.P.") 56 applicable in this proceeding pursuant to Federal Rule of Bankruptcy 7056. Summary judgment, "shall be rendered forthwith if the pleadings, depositions,

---

[11] The Plaintiff invokes the Uniform Fraudulent Transfer Acts of Pennsylvania, 12 Pa.S.C.A. § 5101, et seq., and New Jersey, N.J.S.A. 25:2-20 et seq. without any discussion of choice of law. I see no nexus to Pennsylvania and presume that New Jersey law where the conduct which is the source of the injury occurred (recording the liens on property located in New Jersey) would apply. Fortunately the uniform nature of the fraudulent transfer law renders this issue immaterial.

answers to interrogatories and admissions on file, and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The party moving for summary judgment must overcome the initial burden of demonstrating the absence of a material question of fact. Celotex v. Catrett, 477 U.S. 317, 325 (1986). The substantive law will determine which facts are material. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. Id. at 255. A court must find that the motion alleges facts which, if proven at trial, would require a directed verdict. 6 J. Moore, Moore's Federal Practice, ¶ 56.26 (2d ed. 1988). If so, the respondent "must set forth specific facts showing there is a genuine issue for trial," and may not "rest upon the mere allegations or denials of the pleading." Fed.R.CivP. 56(e). If the non-movant's evidence "is merely colorable, or is not significantly probative, summary judgement may be granted. Anderson, 477 U.S. at 250. However, as it is the moving party's burden to demonstrate the absence of genuine issues of material fact, even if the opposing party fails to file contravening affidavits or other evidence that establishes a genuine issue of material fact, summary judgment must still be warranted and will be denied where the movant's own papers demonstrate the existence of material factual issues. Drexel v. Union Prescription Centers, Inc., 582 F.2d 781, 790 (3d Cir. 1978) (*citing* Adickes v. S.H.Kress & Co., 398 U.S. 144, 159-61 (1990) (citations omitted). See Maldonado v. Ramirez, 757 F.2d 48, 51 (3d Cir. 1985). The absence of a genuine issue

-8-

for trial is evident where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. Mashusita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

## B.

Plaintiff seeks to avoid the liens publicly recorded against Aspect's assets as a result of Aspect's counsel Hou filing the Tseng and Fremont UCC's shortly after the Judgment was entered. Relying on the state Uniform Fraudulent Transfer Act,[12] Plaintiff contends that the filing of these UCC's were transfers that are avoidable as actual and constructive fraudulent conveyances. A transfer is fraudulent as to a present or future creditor if the debtor made the transfer (1) with actual intent to hinder, delay or defraud any creditor of the debtor; or (2) without receiving reasonable consideration for the transfer and a belief that it would incur debts beyond its ability to pay as they come due. N.J.S.A. 25:2-25.

The purpose of the Uniform Fraudulent Transfer Act is to prevent a debtor from placing its property beyond a creditor's reach. In re Wintz Companies, 230 B.R. 848, 859 (8th Cir. 1999). Recognizing that fraudulent intent is not susceptible to direct proof, the New Jersey Uniform Fraudulent Transfer Act provides that fraudulent intent may be established by the demonstration of certain "badges of fraud," non-exclusive examples of which are set forth in N.J.S.A. 25:2-26. These "'badges of fraud' represent circumstances that so frequently accompany fraudulent transfers that there presence gives rise to an

---

[12] See note 11 supra.

inference of intent." Firmani v. Firmani, 752 A.2d 854, 857 (N.J. Super. 2000). Not all badges of fraud need be established to prove fraudulent intent. Indeed, "[t]he presence of just one single factor. . . may cause suspicion of the transferor's intent, [and] the confluence of several in one transaction provides conclusive evidence of an actual intent to defraud." Gilchinski v. National Westminster Bank, 732 A.2d 482, 490 (N.J. 1999). See also, Firmani, 752 A.2d at 857 (finding that the presence of just one factor may suffice to establish fraudulent intent). The statutory but nonexclusive badges of fraud to be considered by the court in evaluating the legitimacy of the transfer are as follows:

> (1)  the transfer or obligation was to an insider;
> (2)  the debtor retained possession or control of the property transferred after the transfer;
> (3)  the transfer or obligation was not disclosed or concealed;
> (4)  before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> (5)  the transfer was of substantially all of the debtor's assets;
> (6)  the debtor absconded;
> (7)  the debtor removed or concealed assets;
> (8)  the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> (9)  the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
> (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

N.J.S.A. 25:2-26.

The presence of at least six of the eleven badges of fraud[13] with respect to the transfers resulting from the filing of the UCC's to encumber Aspect's collateral for the

---

[13] The remainder are not relevant to the nature of the challenged transactions.

-10-

benefit of Tseng and Fremont evidences an actual intent to hinder, delay or defraud the Trustee in his rightful effort to enforce the Judgment.

The creation of the obligation was to an insider. The Tseng UCC's were filed for the benefit of Chu-Wen Tseng, the spouse of Jonathan Chu, Aspects' president and purported sole shareholder. An "insider" for purposes of the Uniform Fraudulent Transfer Act includes a relative of a general partner, director, officer, or person in control of the corporate debtor. N.J.S.A. 25:2-22(b)(6). On the record before me, there is no evidence that Fremont is an insider as defined by the state statute. However, the joint and identical actions taken to benefit it at the same time as Tseng strongly imply the same type of control the law presumes with respect to Chu's wife. Considering Fremont an arms length party would reward Defendants for the vagueness of their pleadings and the limited discovery they provided.

The debtor retained possession or control of the property transferred after the transfer. While a security agreement normally contemplates that the debtor will remain in control of the property, there are restrictions that accompany the granting of a blanket lien such as was evidenced by the UCC's. In a normal commercial transaction, UCC-1 financing statements are filed by the secured creditor to perfect its security interests. Here, the Tseng and Fremont UCC's were filed by Aspect's own attorney, Hou, a highly unusual occurrence that only serves to highlight that the true purpose of the UCC's was to frustrate the Plaintiff's ability to enforce the Judgment. Moreover, while the UCC's were filed purporting to evidence

-11-

security interests taken by both Defendants, neither had been granted a valid security interest by Aspect. No security agreement document was produced for Fremont, and Tseng's document failed to evidence a grant of any security interest. The underlying obligations which the liens purportedly were to secure were either extinguished (Fremont) or not being collected (Tseng). Thus, Aspect was free to retain its assets without fear of any enforcement of the liens memorialized by the UCC's and any collection of the Judgment.[14]

<u>Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.</u> The Trustee brought a motion for summary judgment against Aspect on January 30, 2004 which culminated in the entry of the Judgment on July 2, 2004 in favor of the Trustee for in excess of $1 million. The UCC's were filed within days after the entry of the Judgment. There are no documents to evidence any debt or security granted by Aspect to Fremont to support the UCC's filed by Aspect's lawyer to Fremont's benefit in January 2004. As best as can be gleaned from the purported loan documents, the Tseng UCC's relate to a $800,000.00 loan made by Tseng to Aspect on or about January 12, 2004, six months prior to the filing of the UCC's. Further, the "Security Agreement" was dated June 30, 2004, five and half months after the alleged loan and just two days before the entry of the Judgment. Additionally, the lapse of time between the making of the alleged loan, the date of the Mortgage Note, and the creation of a "Security Agreement" casts considerable doubt

---

[14] Notably Aspect has not made any payments of principal or interest to Tseng in connection with the claimed $800,000.00 loan. Despite this apparent default, Tseng has made no efforts to demand payment or to enforce her interests.

over the legitimacy of the Tseng transactions. If these documents were executed when dated with the intention of memorializing a secured loan, the filing of the UCC's to perfect that loan only after the Judgment was entered suggests otherwise. Given these undisputed facts, some evidence is required from the Defendants to refute the implication that the timing of the filing was in fraud of creditors. There was none.

<u>The transfer was of substantially all of the debtor's assets.</u> The Tseng and Fremont UCC's purport to create a lien on all inventory, accounts receivable, deposit proceeds from sale of product, cash, and all insurance policies of Aspect. Aspect owns no real property and has minimal equipment. As a result of these UCC's, all of the heretofore unencumbered property of the judgment debtor was placed out of the reach of the Trustee.

<u>The debtor removed or concealed assets.</u> The imposition of the UCC's was a transparent attempt to shield the assets of Aspect from the legitimate enforcement efforts of the Trustee.

<u>The debtor was insolvent or became insolvent shortly after the transfer was made or obligation was incurred.</u> A debtor is insolvent if the sum of its debts is greater that all of its assets, at a fair valuation, excluding the property fraudulently transferred with intent to defraud creditors. N.J.S.A. 25:2-23. Aspect, by its own admission, through the representations of its counsel, was insolvent at the time of entry of the Judgment and the filing of the UCC's. Exhibit K.

On this record, I find no genuine issue as to any material fact supporting Plaintiff's claim that the Tseng and Fremont UCC's were filed in an actual attempt to hinder, delay or defraud the Plaintiff in his attempt to enforce the Judgment. <u>AYR Composition, Inc. v.</u>

-13-

Rosenberg, 619 A.2d 592, 596 (N.J. Super. 1993) (finding that defendants failed to create a material issue of fact precluding summary judgment when judge found six of the eleven enumerated statutory factors in determining fraudulent intent as a matter of law). The Uniform Fraudulent Transfer Act, N.J.S.A. 25:2-29, provides for the avoidance of such transfer or obligation to the extent necessary to satisfy the creditor's claim. The Plaintiff is entitled to summary judgment and the avoidance of the UCC's as a matter of law.

Given the transparency of these acts to encumber Aspect's assets to obstruct the Trustee from collecting his judgment for the benefit of CPSI's defrauded consumers, I find it unnecessary to belabor the Trustee's alternative theory that the transfers were constructively fraudulent. Suffice it to say that the UCC's were filed to evidence liens on the assets of Aspect but there is no evidence that there is any obligation to Fremont or that either Tseng or Fremont were ever granted a security interest in the Collateral. These invalid liens gave nothing of value to Tseng or Fremont because they could not be enforced. However, they were a fraud on creditors in placing an impediment to their rightful enforcement of subsequent judgment liens on the "Collateral."

**CONCLUSION**

The Trustee has demonstrated that there are no material facts at issue and that as a matter of law the Trustee has established grounds for the avoidance of the Tseng and Fremont UCC's under the New Jersey Uniform Fraudulent Transfer Act. An Order shall be

Adversary No. 05-0006

entered granting summary judgment in Plaintiff's favor and against Chu-Wen Tseng and Fremont Bonaventure.

 

DIANE WEISS SIGMUND
Chief U.S. Bankruptcy Judge

Dated: December 7, 2006

# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| | : | |
| COMPUTER PERSONALITIES SYSTEMS, INC., | : | Bankruptcy No. 01-14231DWS |
| | : | |
| Debtor. | : | |

| | | |
|---|---|---|
| LAWRENCE LICHTENSTEIN, Trustee for the Estate of Computer Personalities Systems, Inc., | : | Adversary No. 05-0006 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ASPECT COMPUTER CORPORATION [dsm'd 7/29/05], CHU-WEN TSENG, CHIEN-HO CHU aka Jonathan Chu [dsm'd 7/29/05], FREMONT BONAVENTURE, | : | |
| | : | |
| Defendants. | : | |

# ORDER

**AND NOW**, this 7th day of December 2006, upon consideration of the Motion of Lawrence Lichtenstein ("Plaintiff" or "Trustee"), for Summary Judgment (the "SJ Motion") against the two remaining defendants Chu-Wen Tseng ("Tseng") and Fremont Bonaventure ("Fremont") seeking the entry of judgment pursuant to Federal Rule of Civil Procedure 56,

<u>Adversary No. 05-0006</u>

after notice and hearing and for the reasons stated in the accompanying Memorandum Opinion;

It is hereby **ORDERED** that the SJ Motion filed by the Trustee is **GRANTED**. Judgment is entered in favor of the Plaintiff and against Defendants, Tseng and Fremont.

_____
DIANE WEISS SIGMUND
Chief U.S. Bankruptcy Judge